The Honorable Thomas S. Zilly

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR17-163TSZ-001 |
| Plaintiff, | **UNITED STATES'** |
| | **SENTENCING MEMORANDUM** |
| v. | |
| SUNG HONG,<br>  aka LAWRENCE HONG,<br>  aka LAURENCE HONG, | |
| Defendant | |

## I.     INTRODUCTION

*"The trauma is felt not just financially, but emotionally and spiritually."*

--P.B., a minister, and M.K.B., his wife,
victims of the Hongs' fraud

*"I always tell people, hey, if you are going to con someone, con a fellow person, don't con God."*

--Lawrence Hong,
presenting at a Church conference in August 2016

Defendant Sung, aka "Lawrence" and "Laurence," Hong (hereinafter, "Lawrence Hong") is a career con-man, a recidivist in the truest sense of the word. He is an individual with absolutely no moral compass and is driven by only one thing – pure, unadulterated greed. Within nine months after being released from federal prison upon completing his 33-month sentence for his prior federal fraud conviction, Lawrence Hong was back to his criminal ways. For the next seven years, from February 2010 through June 2017, the defendant and his wife preyed on vulnerable victims by targeting those who shared the Hongs' purported religious beliefs to execute an elaborate, massive investment fraud scheme. Through their criminal enterprise, the Hongs fraudulently obtained over $20 million dollars from their victims, spent millions of the ill-gotten money to finance their extravagant lifestyle, and ultimately caused 57 victim investors losses of over $12.7 million.

The United States respectfully recommends that the Court sentence defendant Lawrence Hong to a term of imprisonment of 292 months (24 years 4 months). While this is a lengthy term of imprisonment, it is sufficient, but not longer than necessary, to effect the goals of sentencing. Specifically, such a significant sentence is both necessary and just particularly in light of the egregious nature and circumstances of the offense; Lawrence Hong's uniquely troubling history and characteristics, including his 20-year history of seemingly unbroken fraudulent conduct; and the need to deter the defendant and other like-minded fraudsters, to promote respect for the law, and to vindicate the interests of the Hongs' many victims, like P.B. and M.K.B., whom the Hongs so callously ravaged financially, emotionally, and spiritually. In addition, and perhaps most importantly, a 292-month sentence is needed to protect the public from further crimes of defendant Lawrence Hong. Put simply, nothing short of a long period of incarceration will work in preventing defendant Lawrence Hong from causing significant financial and emotional harm to more victims in the future.

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 2

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II.    FACTS

There are number of important facts for the Court to consider when imposing sentence in this matter.  The Plea Agreement and the Amended Presentence Report ("PSR"), dated September 27, 2018, set forth the basic facts of the Hongs' fraudulent scheme.  Accordingly, rather than repeat such information, this memorandum will focus upon specific aspects of the enterprise and Lawrence Hong.

In this section, the United States will highlight certain facts that demonstrate the devious nature of the Hongs' scheme.  The United States will also discuss the facts surrounding defendant Lawrence Hong's history and characteristics, including his long history involved in fraudulent conduct and his prior federal fraud conviction.

### A.    The Hongs' Scheme to Defraud (February 2010 through June 2017)

#### 1.    Lies and Omissions

In February 2010, just nine short months after getting out of federal prison for his previous fraud conviction, Lawrence Hong, together with his soon-to-be wife, Grace Hong, began operating a major investment fraud that lasted over seven years and reaped millions of dollars.  The Hongs created and used various business entities, all bearing the "Pishon" name.  As part of their solicitations to victims, the Hongs freely marketed that "Pishon" was a Biblical reference to the Pishon River, the first river in the Garden of Eden mentioned in the Book of Genesis.

In order to conceal Lawrence Hong's prior federal conviction from investors, the Hongs put all the Pishon businesses and bank and brokerage accounts in Grace Hong's name.  Over the next seven years, Lawrence and Grace Hong repeatedly lied to investors in order to obtain money to satisfy their greed.  For example, Lawrence Hong misrepresented his credentials to numerous investors by repeatedly asserting that he privately managed billions of dollars for wealthy Korean investors, and that exclusive investment agreements prevented his name from formally appearing on the Pishon business records and marketing material.  None of this was true.

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 3

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

The Hongs did not disclose Lawrence Hong's prior conviction for fraud to the vast majority of investors (i.e., all but approximately 2 or 3 victims). And, even with those that did learn of Hong's prior conviction,[1] Lawrence Hong grossly misstated his conduct, telling one investor, for example, that he had been framed by the victims and it was not his fault. In fact, following his release from prison, it appears that Lawrence Hong changed the spelling of his name (to "Laurence") in order to avoid the investors learning about his prior fraud conviction if they conducted any due diligence.

On a number of occasions, including in a recorded meeting with a confidential source assisting the FBI's investigation, Lawrence Hong showed potential investors a fabricated account statement showing that he managed hundreds of millions of dollars in the Cayman Islands. Other victims reported being shown similar financial statements claiming immense personal wealth and assets under management. Indeed, fabricated financial documents were recovered from the Hongs' email accounts as well as from their Clyde Hill residence, which the Hongs rented for approximately $12,000 per month, financed entirely with victim funds.

Lawrence and Grace Hong also fraudulently touted their historical success. For example, the Hongs created an investment prospectus and marketing material for the Pishon, which they disseminated to potential investors. The written material, like the Hongs' oral solicitations, was riddled with lies and fabrications. As discussed in more detail in the United States' Sentencing Memorandum regarding co-defendant Grace Hong, the Hongs asserted that Grace Hong had impressive credentials, such as Ivy League degrees, a securities license, and investment and asset management experience, that simply did not exist. Moreover, despite the fact that Lawrence Hong had been in

---

[1] To be clear, at least one such investor independently discovered Lawrence Hong's prior conviction and questioned the Hongs. In only one instance did the Hongs voluntarily disclose Lawrence Hong's prior conviction at the outset, and, according to that investor, in retrospect, the disclosure was done in a manner to engender trust and promote the religious-based solicitation angle. Moreover, as part of his explanation of the conviction, Lawrence Hong grossly misrepresented the fraud scheme and essentially denied criminal culpability.

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 4

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   federal prison from 2007 to 2009, and the Hongs did not actually even create their first

2   fraudulent investment business until 2010, they included the following "Performance

3   History" chart in the Pishon prospectus sent to victims showing astronomical historical

4   returns:



| Performance History (%) | 一月 | 二月 | 三月 | 四月 | 五月 | 六月 | 七月 | 八月 | 九月 | 十月 | 十一月 | 十二月 | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2002 | | -5.60 | -2.30 | -4.78 | 0.33 | -4.97 | -0.73 | 23.03 | 8.42 | -8.32 | 3.81 | 41.71 | 49.53 |
| 2003 | 3.53 | -6.33 | 0.14 | -3.04 | -18.92 | -7.23 | -0.15 | 4.07 | 12.50 | -0.33 | 7.18 | 20.83 | 9.51 |
| 2004 | 4.86 | -19.00 | 23.84 | 8.69 | 7.71 | -13.51 | -11.05 | 6.09 | -6.36 | -8.49 | 11.74 | -1.54 | -6.28 |
| 2005 | -7.22 | 8.78 | -3.11 | -5.02 | 20.00 | 7.09 | 0.37 | 1.37 | -8.75 | 0.36 | 4.59 | 4.60 | 21.67 |
| 2006 | 12.52 | -6.18 | 6.00 | 17.56 | -3.03 | 5.73 | -2.50 | -13.27 | -1.74 | 4.59 | 16.40 | -4.49 | 30.31 |
| 2007 | 12.96 | 3.67 | -14.59 | -4.90 | -6.21 | -1.63 | 13.84 | -22.51 | 19.39 | 33.94 | 10.73 | -1.48 | 34.48 |
| 2008 | 4.04 | 15.96 | 8.06 | 2.17 | -4.87 | 6.63 | -2.26 | 8.88 | -1.39 | 2.05 | 1.39 | 7.82 | 58.50 |
| 2009 | -7.67 | -3.82 | -6.56 | 0.80 | 5.06 | -6.65 | 2.53 | -2.99 | 10.68 | 6.12 | 14.87 | -6.18 | 3.10 |
| 2010 | -5.59 | 3.16 | -9.22 | -0.23 | 11.59 | 13.35 | 6.89 | 20.96 | 26.60 | 27.82 | 16.84 | -2.00 | 167.01 |
| 2011 | -3.01 | -0.10 | 6.45 | -0.13 | -4.06 | -11.25 | -3.79 | 8.90 | -4.24 | -10.39 | 1.61 | -2.89 | -22.27 |
| 2012 | 0.01 | 0.58 | -4.51 | -14.35 | 14.58 | 7.24 | 7.98 | 36.79 | -17.12 | 25.82 | 0.79 | 62.18 | 185.85 |
| 2013 | 31.68 | -11.90 | -13.59 | 3.86 | 24.72 | 40.30 | | | | | | | 82.18 |

| | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 |
|---|---|---|---|---|---|---|
| Return | 49.53% | 9.51% | -6.28% | 21.67% | 30.31% | 34.48% |
| Maximum Drawdown | -16.86% | -30.01% | -30.83% | -8.75% | -16.81% | -34.17% |
| Annualized Volatility | 15.09% | 9.73% | 12.43% | 7.93% | 9.50% | 15.55% |
| +/- Months | 5:6 | 6:6 | 6:6 | 8:4 | 6:6 | 6:6 |

| | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 |
|---|---|---|---|---|---|---|
| Return | 58.50% | 3.10% | 167.01% | -22.27% | 185.85% | 82.18% |
| Maximum Drawdown | -4.87% | -16.57% | -11.79% | -24.64% | -18.21% | -23.57% |
| Annualized Volatility | 5.78% | 7.44% | 12.39% | 5.86% | 26.95% | 16.82% |
| +/- Months | 9:3 | 6:6 | 8:4 | 3:9 | 9:3 | 4:2 |

As noted above, in 2008, while Lawrence Hong was incarcerated, the Hongs claimed

58.50% return-on-investment.  In 2010, they marketed a 167% return.  In meetings with

potential investors, the Hongs touted the results as their own, and as fully audited by a

third-party accounting firm.

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 5

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

## 2.    Targeting of Religious Victims

From the outset of their fraud, the Hongs specifically targeted individuals who shared the Hongs' purported religious beliefs.  The reason was simple – trust.  By focusing their fraudulent efforts on those who shared their purported religious beliefs, Lawrence and Grace Hong were able to use the basic tenets of religion – faith and trust – in order to convince their victims to hand over their hard-earned life or retirement savings.

Throughout the scheme, the defendants falsely portrayed themselves as successful money managers who were called upon by God to use their significant wealth and their unique investment expertise to support churches and further other religious causes.  For example, as discussed in more detail below, in August 2016, during a presentation to a congregation at the Lancaster Prophetic Conference (later publicly posted on YouTube), the Hongs described the foundation of their Pishon investment advisory business as part of their higher calling to "use the talents that [God] gave [them] both" to help churches be financially sustainable, and in turn advance religious and charitable causes.  *See* Exhibit A, Video Clip of Conference.

Furthermore, as noted above, the very name of the Hongs purported investment advisory businesses – Pishon, the first river in the Garden of Eden in the Book of Genesis – was designed to entice religious investors.  During the scheme, the Hongs ran Pishon & Co., LLC,  a purported hedge fund; the First Pishon, LLC; Pishon Capital Management, LLC, and Pishon Holding, LLC.    Still more, to enhance the façade of altruistic motivations, the Hongs created the "Pishon River Foundation," which they publicly marketed as their charitable arm, to which proceeds from their successful investing were dedicated to religious and charitable causes.  Indeed, Grace Hong, for a time, used the Foundation as her cover photo for her public personal Facebook account:

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 6

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9



10   In fact, one of the victims of the Hongs' fraud was a church, which, based on the

11   Hongs' various false promises and representations, invested $1 million with the Hongs in

12   May 2016.[2]  Through that relationship, the Hongs attended the Lancaster Prophetic

13   Conference in August 2016, where they gave a presentation to the large audience.

14
15



16
17
18
19
20
21
22
23
24
25
26
27

28   [2] The church eventually lost over $277,000 as a result of the Hongs' fraud.

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 7

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



The Hongs' presentation was recorded and eventually put on YouTube.

A number of victims invested with the Hongs after attending the conference or watching the Hongs' fraudulent presentation online.  A copy of the Hongs' presentation is attached as Exhibit B.   While it is lengthy, the United States respectfully requests that the Court review the entire video because it provides insight into the heart of the Hongs' fraud and the depravity of their conduct.  At the time they spoke at the conference, the Hongs had been running their fraud for over six and a half years and had already misappropriated and lost millions of dollars of investors' funds.  With that in mind, the ease with which they spoke at the religious conference and fraudulently touted their successes and experience, all to a devoutly religious audience, is truly shocking.

For example, shortly after their introduction, Grace Hong falsely touts her background at Deutsche Bank and then describes how the Hongs created their company to use the talents God gave them to help churches become financially sound.  Exhibit A, Clip of Conference Video.  A few minutes later, Lawrence Hong talked about how sad it is that others in the financial industry often target religious individuals by using "fear mongering" stating "if you are going to con someone, con a fellow person, don't con God."  Exhibit C, Clip of Conference Video.  Later, Lawrence uses that very tactic – fear mongering – when speaking to these potential investors, telling them that "the way it is

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 8

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

right now, there is no middle America.  You guys will never get ahead.  I'm sorry.  I'm not here to lie and give you false hope."  Exhibit D, Clip of Conference from 32:10 to 32:56.

The Hongs' clearly preyed on the trust of those who shared the Hongs' purported religious beliefs, and their efforts were very effective.  Numerous victim statements have been separately submitted to the Court for consideration.  They are powerful and provide a first-hand account of how the Hongs targeted their victims and the lasting impact their deceit has imposed.  Many victims discuss the heightened trust engendered by the Hongs' proclaimed (but false) religious and charitable motivations.   By way of example,

- As Victim C.A. describes, "*As a minister and missionary – I chose to invest with the Hongs because of their professed faith and their desire to help ministers.  I invested all the money I had in hopes of growing it to a point of providing a ministry retreat center.*"  C.A.'s Victim Impact Statement.

- Victim K.G. notes, "*what caused me to trust them even more was the fact that they presented themselves as Christians, and they had ties to ministers and Christian leaders that I personally know and highly respect.*"  K.G.'s Victim Impact Statement.

- P.N. and J.N. also placed trust in the Hongs because of their professed faith: "*The Hongs presented themselves as devout Christians and had all the lingo to go with it.  We felt good about them and believed them.*"  P.N. and J.N.'s Victim Impact Statement.  They also believed the Hongs' statements about using their talents to help others: "*[The Hongs] were starting a special fund that we could be a part of and a significant part of the profit they would personally gain from this fund would go towards funding the spread of the Gospel in various efforts.*"  *Id.*

### 3.    Misappropriation of Investor Funds for Personal Gain

Contrary to their false representations to investors, the Hongs did not invest all of the hard earned money their victims entrusted to them.  Instead, they misappropriated

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 9

millions of dollars in order to fund their insatiable greed and avarice.  The Hongs lived a life of extraordinary luxury (financed entirely by victims' money, and in some cases, retirements), which they used to flaunt their success and in turn to solicit new investors. The list of extravagant spending reads like something out of the television show "Lifestyles of the Rich and Famous":

- Thousands of dollars per month in rent, including $12,000 per month in rent for a 9,000+ square foot mansion in Clyde Hill



//

//

//

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 10

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

- Hundreds of thousands of dollars on high-end vehicles, including a Maserati and an Aston Martin (photograph below), as well as BMWs and a Lamborghini[3]



- A personal yacht named, "For Grace"



---

[3] Indeed, in June 2017, at the time their residence was searched, the Hongs had four luxury cars.

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 11

- Lavish vacations, including at high-end resorts and hotels in the Bahamas, Beverly Hills, and the San Juan Islands, among other places



UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 12

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

### 4.     The Impact of the Hongs' Crimes

The Hongs' seven-year fraud left devastation in its wake.  All told, there are 57 victims who suffered over $12.7 million in losses.  A number of investors lost their entire life and retirement savings and were forced to dramatically change their lifestyle or go back to work.  In the words of Victims P.N. and J.N.:

> "*As a result of the Hongs' crimes we no longer have any money left to invest.  Our retirement funds are completely gone.  We are trying to rebuild our assets and [P.N.] is working 70 hours per week in his mortgage business and doing this at 79 years of age*."

Victims C.S. and A.S. "*lost all life savings over 17 years of working including [their] retirement plan, estate planning, our children* [sic] *college funds, and our house down payments*."  Victim K.Y. lost all $130,000 he invested with the Hongs which represented "*nearly all of [his] retirement money along with all of [his] saving*."  As a result, K.Y. was unable to buy a house for his family.   Unfortunately, numerous other victims felt similar financial harm.  Victim M.G., who retired after a 37-year career in public service as a firefighter, lost $100,000 of his retirement savings.

But the pain these victims experienced, and continue to endure, is beyond financial.  That is, unlike many fraud cases, the stolen dollars represent only one aspect of the Hongs' impact.  Given the nature of the Hongs' fraud, the damage is also emotional and spiritual.  In addition, victims are sadly left questioning themselves, wondering what *they* did wrong to lose their hard earned money.  By way of example,

- According to Victims C.S. and A.S., they had "*[m]any disagreement issues result* [sic] *from [the Hongs' fraud]*."  They "*blamed each other and tried to go back in the past to find out whose [fault] it is in making the wrong investment decision with the Hongs*."  C.S. and A.S. describe how these fights "*resulted in a stressful environment for 3 months and affected our children as they cried during [the] arguments*."

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 13

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

- Victims S.Q. and J.Q. had similar issues, noting that the "*emotional impact of this fraudulent scheme has greatly affected our marriage and relationships with our family, and the church community. We have been dealing with issues of anger, shame, and regret from being victimized by the Hongs.*"

- Victim K.Y. perhaps sums it up best by stating, "*It has been a tumultuous year for myself and my family.*"

The United States anticipates that both the Hongs will seek a lower sentence by pointing to the impact a lengthy term of imprisonment will have on their children. There admittedly will be a significant impact on the Hongs' children, and any negative consequence is regrettable. However, those consequences flow entirely from the Hongs' own misconduct – a natural and foreseeable byproduct of their decisions to engage in a years-long, multi-million-dollar fraud, all to indulge an extravagant lifestyle few can legitimately afford. But the Hongs' children are not the only children impacted by the Hongs' greed and egregious fraud. As multiple victims note, the Hongs' also victimized the children of those who invested with them, and there will be long lasting effects on those children.

- Victim C.E. and E.E. describe how they told the Hongs that the Hongs' "minimum investment" of $100,000 "*represented our entire life savings to date.*" C.E. and E.E. note that the Hongs both knew they had three "*small children, and that this money was planned for a down-payment on a house for our family.*" Knowing that, the Hongs stole it all. As C.E. and E.E. correctly point out, the "*size of these crimes are such that they are multi-generational, setting family's* [sic] *back and altering the course of the next generation.*"

- Victims C.S. and A.S. invested with the Hongs after A.S. met Grace Hong and the Hongs' children. As noted above, as a result of the Hongs' fraud, C.S. and A.S. lost everything. They lost their ability to put a down payment on a house in a good school district for their children; and, because they now have to rent (as the

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 14

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

Hongs convinced them to sell their home and invest the proceeds with Pishon), their "*son cannot remain at the same school which he has already established the good relationships with friends and teachers.*"  They are not able to save for their two children's college funds.

- The Hongs' conduct also had a significant impact on the son of Victims S.Q. and J.Q.: "

    > *This experience has caused great emotional distress to our son.  Our son developed an emotional connection with the Hongs; they preyed on him, saying that they wanted to mentor him, promising his dream job upon college graduation in the Hong's New York office.*

But when the Hongs' fraud was exposed, there was no job.  Unfortunately, S.Q. and J.Q.'s son had forgone a number of other opportunities.  As a result, he "*had a hard time finishing school, became depressed, excessively slept, and gained weight. ... Our son is still dealing with trust issues and depression.*"

- Finally, Victim K.Y. describes how the Hongs' depravity has impacted his young family:

    > *With one young toddler and an infant, we were planning to buy a house with these funds [the money he lost], but with the housing situation the way it is, [the Hongs] ruined our hopes to live a normal life.  We have had to change the way we live, change the way we trust people and most importantly, it has been a challenge keeping my family together.  Our lives were forever changed by these criminals and there is nothing they can do to heal the deep wounds they have caused....*

When considering the impact the Hongs' fraud might have on their own children, the United States respectfully submits that the Court should equally consider the severe, direct, and irreversible impact that the Hongs' profiteering imposed upon the innocent children of their numerous victims.

**B.      False Statements to the Department of Justice**

As noted herein, as part of his 2007 federal sentence for investment fraud, Lawrence Hong was ordered to repay $870,834 in restitution to victims.  Not

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 15

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   surprisingly, following his release from prison, and while he was spending millions of

2   dollars on his extravagant lifestyle, Lawrence Hong had little interest in repaying

3   restitution to the victims of his prior frauds.  Throughout his term of supervised release,

4   Lawrence Hong periodically made minimal payments -- of at most approximately $1,000

5   per month.  Lawrence Hong went to great lengths to hide his fraud not only from his

6   victims, but also from the prying eyes of the United States Probation Office (and in turn

7   this Court) and the United States Department of Justice (DOJ).

8        In July 2016, the United States Attorney's Office's Financial Litigation Unit sent

9   Lawrence Hong a letter informing him that the DOJ was reviewing his case file.  The

10  DOJ letter included a Financial Disclosure Statement which Lawrence Hong was

11  required to fill out to so the DOJ could decide whether to set up a payment plan or other

12  collection action.

13       In August 2016, around the same time he was fraudulently touting his investment

14  success and religious beliefs at the Lancaster Prophetic Conference, Lawrence Hong

15  returned the form, which he signed under penalties of perjury, to the DOJ.  In it,

16  Lawrence Hong made a number of materially false statements in order to cover up his

17  fraud, avoid repaying his prior victims, and continue to live his lavish lifestyle.  These

18  lies included, among others: (1) that he and Grace Hong had no salaries or income despite

19  the fact they were both purporting to act as money managers at the time; (2) that his in-

20  laws rented the Clyde Hill home when, in fact, Grace Hong had completed and signed the

21  rental application (also with false information), and they paid $12,000 in stolen investor

22  funds as rent per month; (3) that Grace Hong's occupation was "family money from

23  inheritance" even though he knew they were actively touting Grace Hong as the CEO of

24  Pishon; and (4) that neither he nor Grace Hong, nor any entity associated with them, had

25  any accounts at any financial institutions in the prior five years despite the fact that they

26  had numerous bank and brokerage accounts.

27       In addition, it appears that Lawrence and Grace Hong coordinated her response to

28  corroborate his false statements and mislead the DOJ.  In a separate letter, sent through

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 16

1  an attorney, Grace Hong falsely stated that she "currently manages her own separate

2  assets that are all inherited or were owned prior to marriage" and that "there are no

3  community assets and there is no community income."  PSR ¶ 17.

4  **C.     Defendant Lawrence Hong's Prior History of Fraud (1998 to May 2012)**

5         As noted in the PSR, defendant Lawrence Hong has an extensive history of

6  fraudulent investment conduct spanning at least 20 years – from 1998 through 2017.  In

7  order for the Court to accurately assess Mr. Hong's history and characteristics (in

8  addition to his egregious conduct in the current prosecution), the United States has set

9  forth below facts reflecting Mr. Hong's repeated issues involving fraud between 1998

10  and 2012 (when his federal supervised release ended), including his prior federal fraud

11  conviction.  As the Court will see, none of these incidents, legal proceedings, or

12  encounters with the criminal justice system has deterred the defendant in any way from

13  engaging in further fraudulent conduct.  In fact, it appears they have emboldened him.

14         **1.     The 1998 Complaint Alleging Fraud (PSR ¶ 39)**

15         In 1998, an individual (S.J.L.) sued Lawrence Hong in King County Superior

16  Court.  A copy of the Complaint is attached as Exhibit E.  According to the civil

17  Complaint, S.J.L. and Lawrence Hong started a company to invest in real estate and

18  publicly traded securities.  The Complaint alleges that the defendant engaged in

19  numerous questionable business transactions and fraudulent conduct that caused losses of

20  approximately $100,000.  The civil matter was resolved through settlement.

21         **2.     The 2003 Korean National Police Agency Investigation (PSR ¶ 40)**

22         In 2003, defendant Lawrence Hong was investigated by the Korean National

23  Police Agency[4] after an individual (S.K.) came forward and alleged that Lawrence Hong

24  had defrauded her out of $100,000.  Specifically, S.K. alleged that Hong falsely portrayed

---

[4] The FBI obtained documents concerning this investigation from the Korean National Police
Agency in connection with the FBI's investigation that led to Lawrence Hong's 2007 fraud
conviction.  The documents are attached as Exhibit F.

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 17

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

himself as a renowned hedge fund manager who managed funds with balances over $1 billion, and that he managed funds for, among others, the Chairman of Starbucks.  PSR ¶ 40.  The alleged fraud appears eerily similar to the offense conduct in his two federal prosecutions in this District.

**3.**    *United States v. Sung Hong,* **CR07-033 JLR (W.D. Wash) (PSR ¶ 36)**

On January 5, 2007, Lawrence Hong was arrested and charged for defrauding his neighbor, W.S., out of more than $800,000.  *United States v. Sung Hong*, CR07-033JLR. In order to befriend W.S. and fraudulently obtain his money, Lawrence Hong "represented to the victim that he was an experienced investor; that he made a significant amount of money in Korea; that his father-in-law was the finance minister of South Korea; and that he had access to secret information regarding the strategies of large international investors, which included entities owned or controlled by international financier George Soros."  PSR ¶ 36.  Not surprisingly, Lawrence Hong did not, in fact, have that experience or those connections.

Later, when W.S. asked Lawrence Hong to return some of the money to pay for living expenses, Lawrence Hong threatened W.S. and his daughter.  Specifically, Lawrence Hong falsely told W.S. that his money was tied up with an international crime syndicate, and that this syndicate would kill both Lawrence Hong and the victim if he returned any funds to W.S.

In April 2007, Lawrence Hong pleaded guilty to one count of wire fraud.  On January 14, 2008, the Honorable James L. Robart conducted a sentencing hearing.  A transcript of the sentencing hearing is attached as Exhibit G.   During the hearing, the United States highlighted the threats Mr. Hong made to W.S. and asked for a sentence of 33-months, the high end of the advisory Guidelines range.  Exhibit G, pages 6-7.  W.S. also spoke about Mr. Hong's threats and the harmful impact it had on him and his family and how Mr. Hong had stolen W.S.'s entire savings.  Id., page 8-9, 11.  Importantly, W.S. also foresaw Mr. Hong continuing his fraudulent ways, stating, "The main item here is …

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 18

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  to protect the public from further crimes of the defendant.  My goal here today is that he

2  is removed from society so he can't hurt anybody else.  He won't stop.  He can't stop.

3  And if he gets a short sentence, he's just going to be back out there doing this stuff

4  again." Id., pages 12-13.

5       In response, Mr. Hong did what he does best, he lied to the Court: "And, Your

6  Honor, once I get back into society, not only will I try my best, even if it means getting

7  menial jobs – multi-menial jobs, I'll try my best to pay back my debt to [W.S.], and

8  you'll never see me here again, because I learned my lesson being incarcerated." Id.,

9  page 15.  Thankfully, Judge Robart saw through Mr. Hong's feigned plea for mercy.  In

10 imposing a 33-month sentence, Judge Robart noted that the nature and circumstances of

11 the offense were "horrific." Id., page 17.  When considering Mr. Hong's history and

12 characteristics, Judge Robart stated that, "about the only thing that I can find in regards to

13 Mr. Hong is that fact that, apparently, he may have a gambling problem." Id., page 18.

14 Judge Robart also cited to the need to protect the public from further crimes of the

15 defendant in support of his 33-month sentence. Id., page 19.

16      After imposing sentence, Judge Robart addressed Mr. Hong directly and advised

17 him that another conviction for fraud would be severely punished: "Mr. Hong, I have no

18 certainty that you are getting any of this message, but at least you're getting 33 months to

19 think about it.  And I can secondly tell you that if you do end up here again, the next

20 time it's not going to be a slight increase; it will be a dramatic increase." Id., page 21.

21  **4.      Mr. Hong's Other Fraud That the Court Incorporated into the**
22  **          Restitution Order (PSR ¶ 36)**

23      At some time prior to his arrest and detention on January 5, 2007, Lawrence Hong

24 defrauded two additional victims, Y.W.K. and S.W.H., out of approximately $189,706

25 and $25,924, respectively.  In addition to the $655,834 in restitution he ordered for W.S.,

26 Judge Robart included the additional amounts for Y.W.K. and S.W.H. in the restitution

27 order in *United States v. Sung Hong*, CR07-033 JLR, after Mr. Hong acknowledged that

28

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 19

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  he had defrauded them as well.  PSR ¶ 36;  *See also* Dkt. 19, CR07-033JLR, Defendant

2  Hong's Sentencing Memorandum, page 5.

3    **5.    2007 – Mr. Hong Defrauds an Inmate at the Federal Detention Center
4         (PSR ¶ 41)**

5        According to documents the United States obtained from the U.S. Probation

6  Office, shortly after Lawrence Hong was arrested and detained at Federal Detention

7  Center (FDC) in Seatac, Washington in January 2007, Mr. Hong fraudulently obtained

8  $300,000 from G.S., another inmate housed in the same unit at the FDC.[5]  In short, from

9  February 2007 to May 2007, Mr. Hong used a number of misrepresentations to induce

10 G.S. to invest with Mr. Hong.  For example, Mr. Hong told G.S. that he was a hedge fund

11 manager; that his company made investments for some high-level officials in the Korean

12 government; that he was an experienced stock market investor with a good reputation,

13 and that he was actually the victim in his then-pending federal case because he had done

14 nothing wrong.

15       Ultimately, in June 2007, at G.S.'s direction, G.S.'s mother wire transferred

16 $300,000 from Hong Kong to Mr. Hong's mother's bank account in South Korea.  In July

17 2007, Mr. Hong attempted to extract additional funds from G.S.  Mr. Hong told G.S. that

18 the minimum investment was actually $500,000, not the $300,000 G.S.'s mother had

19 already sent.  Mr. Hong indicated he was willing to put in some of his own money to

20 meet the minimum investment amount, but said he could only come up with $100,000,

21 and Mr. Hong asked G.S. to put in an additional $100,000.  Fortunately, G.S. refused.

22 There of course was no investment that Lawrence Hong managed or to which he had

23 access.

24       Between July 2007 and July 2010, G.S. repeatedly asked Mr. Hong to return some

25 of the money for various expenses.  Mr. Hong paid some money to G.S.'s wife and

26 ───────────────

27 [5] The facts set forth herein are derived from documents the United States obtained from the U.S.
   Probation Office, which are attached as Exhibit J.  Given the sensitive nature of these documents,
28 the United States has filed them separately under seal.

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 20

1  attorney but rarely in the requested amounts and only after numerous excuses as to why

2  the payments were delayed.  Eventually, G.S. asked that all the money be returned.

3  According to G.S.'s defense counsel, Mr. Hong eventually paid the money back, but the

4  United States does not have any records as to when that payment was made and from

5  what funds.[6]

6  ### 6.   Mr. Hong's Attempts to Deceive the U.S. Probation Office While on
7  Supervised Release

8  On May 28, 2009, Mr. Hong was released from custody after serving his 33-month

9  sentence, and he began his three-year term of supervised release.  While the defendant

10 had no formal violations of supervised release, Mr. Hong made only minimal payments

11 toward his restitution obligation and obviously did not disclose to the Probation Office

12 his involvement in his current fraud scheme.  In fact, during the course of the

13 investigation into the Hongs' fraud, the United States obtained evidence that Mr. Hong

14 submitted false claims regarding his employment status, at a local jeweler, throughout his

15 term of supervised release in order to conceal his actual involvement in the ongoing

16 fraud.  Specifically, bank records indicate that the Hongs "made periodic payments to

17 [the jeweler] in amounts that indicate it was used to pay Mr. Hong's claimed wages."

18 PSR ¶ 36.  A spreadsheet of the payments between January 2011 and August 2012 and a

19 check from Grace Hong *to* the jeweler, with the memo line: "Aug paycheck," are

20 attached at Exhibit H.

21 ## III.   THE ADVISORY GUIDELINES RANGE IS 292 TO 365 MONTHS

22 The United States has filed a separate Brief Addressing the Sentencing Guidelines

23 in which the United States addresses defendant Lawrence Hong's objections and sets

24 forth its position concerning the applicable Guidelines range.  In sum, the United States

25

26 _____

27 [6] Since it appears that neither Lawrence Hong nor Grace Hong had legitimate sources of income
   at the time this money was likely repaid, the United States suspects, but has no firm evidence,
28 that this repayment may have been derived from the Hongs' instant investment fraud scheme.

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 21

1  respectfully requests that the Court find a total offense level of 38 and a Criminal History

2  Category III, which results in an advisory Guidelines range of *292 to 365 months*.

3  ## IV.   THE 3553(A) SENTENCING FACTORS SUPPORT A SENTENCE OF 292

4  MONTHS

5         The United States respectfully requests that the Court sentence Lawrence Hong to

6  a term of imprisonment of 292 months – or, 24 years and 4 months – as it is sufficient,

7  but not greater than necessary, to meet the goals of sentencing.  A 292-month sentence is

8  warranted considering defendant Lawrence Hong's sentencing guideline range and, more

9  importantly, the sentencing factors under Title 18, United States Code, Section 3553(a),

10 including: (1) the serious nature and circumstances of Lawrence Hong's offense; (2) his

11 history and characteristics, including his prior federal fraud conviction and his lifelong

12 fraudulent conduct; (3) the need to protect the public from further crimes of the

13 defendant, (4) the need for the sentence to reflect the seriousness of the offense, to

14 promote respect for the law, to provide just punishment; (5) the need to afford deterrence

15 to defendant Lawrence Hong and other would be white-collar recidivists; and (6) the

16 need to avoid unwarranted sentencing disparities with other defendants engaged in

17 similar conduct with similar histories.   The United States further respectfully submits

18 that both the Probation Office's recommendation of 12 years and the defendant's

19 anticipated recommendation of between 8 to 10 years fail to adequately address the

20 sentencing factors set forth in Section 3553(a).

21 **A.     The Serious Nature and Circumstances of the Offense**

22        A sentence of 292 months imprisonment reflects the serious nature and

23 circumstances of Lawrence Hong's blatant, extensive fraud that lasted over seven years,

24 and only ceased due to his arrest and the intervention of law enforcement.  Lawrence

25 Hong made the conscious decision to continue his fraudulent ways day after day, month

26 after month, and year after year.  When the fraud was finally revealed, the Hongs' fraud

27 left 57 victims with losses of exceeding $12.7 million.  The length and size of the fraud

28

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 22

1  alone would warrant a significant sentence.  However, there are a number of other facts

2  that demonstrate the serious nature of the Lawrence Hong's criminal activity.

3       First, Lawrence and Grace Hong engaged in a significant affinity fraud.

4  Throughout the fraud, the Hongs callously preyed upon the most vulnerable of victims –

5  those that trusted the Hongs based upon their purported shared religious devotion and

6  beliefs.  The Hongs repeatedly took advantage of that trust.  As the Hongs' own words at

7  the Lancaster Prophetic Conference make clear, the Hongs were willing to go to any

8  length and tell any lie, without pause or remorse, in order to separate these devoutly

9  religious individuals from their money.

10       Second, Lawrence Hong went to significant lengths and took elaborate steps to

11  prevent his victims, banks and brokerage firms, and ultimately law enforcement, from

12  discovering the fraud.  He hid his prior conviction from nearly all the investors, and even

13  changed the spelling of his name to disguise his prior misconduct.  Lawrence and Grace

14  Hong used Grace's name on every business, investment contract, promissory note, bank

15  or brokerage account, and prospectus.  They directed their investors to send funds

16  directly to accounts held in the name of the Pishon entities, even though they intended to

17  steal it, sometimes the very same day.  *See* PSR ¶ 13;  *see also* United States' Sentencing

18  Memorandum for Grace Hong (describing in detail the immediate misuse of Victim-1's

19  funds for the Hongs' personal luxury).  The Hongs used Grace Hong's personal bank

20  accounts to launder victim funds to a brokerage account, also in her name, so that the

21  brokerage firm would not become aware that the money was not the Hongs', but rather

22  money they had stolen from investors.  When the DOJ confronted Lawrence Hong about

23  his paltry payments towards his prior restitution obligation, he sent a Financial Disclosure

24  Statement containing numerous false statements after signing it under penalty of perjury.

25       In addition, the Hongs' fraud was driven solely by greed and avarice.  While

26  wreaking havoc on the retirement and life savings of his victims, Lawrence Hong lived in

27  a mansion in Clyde Hill, drove fancy cars, stayed at high-end resorts and hotels on

28  expensive vacations, bought a yacht, and otherwise lived extremely lavishly.

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 23

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    The serious nature of the defendant's crimes, however, is best seen through the

2  words of the victims of the offense.  In addition to the discussion above concerning the

3  impact on the victims, it is important to highlight that resulting harm when discussing the

4  seriousness of the offense.  For example, P.B. and M.K.B. describes how the Hongs were

5  able to gain their trust:

6    *We first met the Hongs through our church.  They invited us to their home several*
       *times, treated us to meals, and even had us join them on a mini-vacation at Friday*
7    *Harbor in the San Juan's* [sic]*.  It's been very disheartening that through all this*
       *we were deceived in friendship so he can get funds from us to invest.*
8

9

10  Victim E.E. noted the devastation the fraud has caused on her family:

11    *As a first generation Latina who grew up in the inner city, I worked hard every*
       *day to get ahead from the life of poverty that I faced.  I have lived a life of giving*
12    *back to the community, and have worked long hours as a Middle School Teacher*
       *to disadvantaged students.  The majority of the money that was invested was from*
13    *my teacher savings.  I wanted a better life for my children and realized that dream*
       *when we were able to save enough money for a down payment on a home.  I was*
14    *going to take a few years off from work to finally be at home with our young*
       *family.  This was all taken away from us when we became victims of the Hongs.*
15    *The Hongs knew our financial hardships and all that we had lost in the recession.*
       *We are now faced with starting all over again and not knowing when we will able*
16    *to pull ourselves out of this financial loss.*

17

18

19    Finally, the United States would like to address a point the Probation Office made

20  in its recommendation that the Court impose a term of imprisonment of 12 years.  On one

21  hand, the Probation Office correctly notes the severity of Lawrence Hong's criminal

22  conduct, noting that the "underlying offense was a prolific, complex, and serious fraud."

23  The Probation Office goes on to list a number of other factors that demonstrate the

24  seriousness of Lawrence Hong's offense: the length of the fraud, the large loss amount,

25  the number of victims, the fact that the victims were severely impacted, and that this was

26  an affinity fraud.  Later in its recommendation, however, the Probation Office seems to

27  contradict these statements by asserting that "the fraud guidelines create a piling on effect

28

UNITED STATES v. SUNG HONG, CR17-163TSZ                    UNITED STATES ATTORNEY
SENTENCING MEMORANDUM - 24                                      700 STEWART STREET
                                                              SEATTLE, WASHINGTON 98101
                                                                    (206) 553-7970

that include 19 separate enhancements …"  Contrary to Probation Office's characterization, the Guidelines specific offense enhancements are designed to acknowledge and capture the factors the Probation Office noted above and others that demonstrate the unique nuances and seriousness of the crime, including the amount of loss, the substantial financial hardship of numerous victims, the affinity fraud component (acting on behalf of a religious organization), that the defendants were acting as commodity trading advisors and abused a position of trust, the use of sophisticated means, and that the defendants engaged in money laundering.  Thus, the Guidelines attempt to include the very factors that the Probation Office points to in describing the seriousness of the offense.  That is a far cry from "piling on."

In sum, Lawrence Hong's fraud lasted over seven years and, but for the FBI, would have continued onward, compounding losses and accumulating additional victims. The scheme was designed to target those with deeply held religious beliefs.  He executed it only to satisfy his greed.  The fraud caused numerous investors significant financial and emotional harm.  To cover up his fraud, Lawrence Hong made numerous lies to the United States government.  It is clear that a 292-month sentence most accurately takes into consideration the serious nature of the offense.

**B.    The History and Characteristics of the Defendant**

A sentence of 292 months is also supported by the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1).  As set forth below, Lawrence Hong is a career con-man.  A recidivist with a 20-year history of engaging in fraudulent conduct.  But as a preliminary matter, it is important to note that Lawrence Hong's conduct *in the current affinity fraud* was egregious and involved numerous sophisticated lies to a number of victims.  Furthermore, his fraudulent conduct was not a simple mistake made on only a few occasions.  Rather, he engaged in a seven-year fraud in which he diverted and misappropriated millions of dollars through hundreds upon hundreds of transactions. During those seven years, Lawrence Hong faced a simple choice – stop lying to investors

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 25

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

and others, including the United States government, in an effort to keep the fraud from collapsing or begin to rectify the situation by stopping the fraud himself and admitting his misconduct.  Every day, Lawrence Hong made the decision to continue and escalate his fraud.  That alone says a significant amount about his history and characteristics.

Just as important, however, is the fact that Lawrence Hong is a recidivist.  He has a prior federal conviction for investment fraud for which he received a sentence of 33 months.  After his release from federal prison in May 2009, Lawrence Hong began his current fraud less than a year later, by February 2010, while still serving his term of supervised release.  Thus, Lawrence Hong is scored as a Criminal History Category III.  However, as the Probation Office correctly noted in its recommendation, this "criminal history score *under-represents* the seriousness of [the defendant's] criminal history or the likelihood he will commit further crimes" (emphasis added).

In short, as Judge Robart acknowledged in Hong's prior sentencing, *see* Exhibit G, page 18, there are simply no mitigating factors in the defendant's history and characteristics.  Even back in 2008 (i.e., before the defendant escalated his fraud), having reviewed all information presented on Lawrence Hong's behalf, Judge Robert concluded: "I search the record before me to find something encouraging to say.  About the best I can come up with is that I'm sure Mr. Hong loves his mother dearly.  *Id.*

Indeed, Lawrence Hong is a fraudster to the core, someone with a history of engaging in fraudulent conduct that spans nearly his entire adult life.  For approximately 20 years, defendant Lawrence Hong has been involved in fraud spanning from the conduct resulting in a civil lawsuit in 1998 until his most recent arrest in June of 2017.  During this time, Lawrence Hong has been the subject of at least three criminal investigations in two countries, Korea and the United States.  While he was in custody pending sentencing in his prior federal case, he defrauded another inmate at the FDC out of $300,000.  In short, even incarceration will likely not deter Lawrence Hong from his deeply rooted criminal proclivities.

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 26

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

**C.     The Need To Reflect the Seriousness of the Offense, to Promote Respect for the Law and to Provide Just Punishment**

A sentence of 292 months is also needed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).  The seriousness of these crimes is greatly enhanced when, as here, the fraudulent scheme stretches over multiple years, involves over tens of millions of dollars in fraudulently obtained money and over $12 million in losses, and is perpetrated on vulnerable victims.  Given the seriousness of the crime and the defendant's behavior its commission, a term of 292 months imprisonment will promote respect for the law and provide just punishment for the offense.

**D.     The Need to Afford Adequate Deterrence to Criminal Conduct**

A 292-month sentence is also needed "to afford adequate deterrence to criminal conduct."  18 U.S.C. § 3553(a)(2)(B).  Given his lengthy history of fraudulent conduct and the fact that he was undeterred by his prior term of imprisonment, there is simply no indication that *any* sentence will deter Lawrence Hong from committing additional crimes in the future.  However, the United States believes that a lengthy sentence may deter others who have previously been convicted of fraud offenses from engaging in further financial crimes upon release from prison.  Such a sentence would show investment fraudsters that if continue to steal millions of dollars from innocent victims, a significant prison sentence will follow.

**E.     The Need to Protect the Public From Further Crimes of the Defendant**

Section 3553(a)(2)(C) directs the Court to impose a sentence that considers the need to protect the public from further crimes of the defendant.  For the reasons outlined above, the United States concurs with the Probation Office's assessment that it "appears the only means of protecting the community is to impose a lengthy custody term."  However, the United States respectfully disagrees that a 12-year sentence is sufficient to adequately protect the public from further crimes of this uniquely resilient defendant.  As

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 27

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  the facts make clear, there is a strong likelihood, if not near certainty, that this particular

2  defendant will simply reoffend at the earliest opportunity, as soon as he is released from

3  prison.

4        In considering deterrence and in weighing the need to protect the community, the

5  Court should strongly consider the wisdom of the victims --- those with first-hand

6  knowledge of Lawrence Hong and his character.  As described above, in his prior

7  sentencing hearing, W.S., Lawrence Hong's neighbor and investment fraud victim,

8  addressed the Court.  Unfortunately, W.S. stated, with remarkable clairvoyance,

9  
10  
11  
> *The main item here is ... to protect the public from further crimes of the defendant. My goal here today is that he is removed from society so he can't hurt anybody else.* **He won't stop.  He can't stop.  And if he gets a short sentence, he's just going to be back out there doing this stuff again.**

12  
13  Exhibit G, pages 12-13 (emphasis added).  Indeed, it was so.  The victims of Lawrence

14  Hong's current offense, like W.S. roughly ten years ago, are now sounding the same

  alarm bells.  For example, Victim K.G. notes:

15  
16  
17  
18  
> *Lawrence already served time for committing this same type of crime, and as soon as he was released, went right back into doing the same thing again.  Clearly he did not learn anything, and feels no remorse for all the people he hurts. ... I sincerely hope they will be given the maximum sentence. ... at the very least, while they are incarcerated, they will not be able to prey upon more victims.*

19  
20  Victim K.Y. expresses his frustration and hopes that justice will be done to ensure no one

  else is victimized:

21  
22  
23  
24  
> *Initially, I was hopeful that the justice system would prevail.  However, the justice system failed to stop this criminal from committing the same crime within merely a year or so.  Thus, I have my doubts. ...  All I can ask, is that justice be served for the many victims like myself, and to ensure that this CANNOT happen again.*

25  The Court should listen to the victims, heed their warnings, and impose a sentence of 292

26  months to ensure, to the best of the Court's ability, that Lawrence Hong will not

27  victimize more innocent people for a long, long time.

28  

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 28

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

**F.     The Need to Avoid Unwarranted Sentencing Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct**

Section 3553(a)(6) directs the Court to consider "the need to avoid unwarranted sentencing disparities among defendants *with similar records* who have been found guilty of *similar conduct*" when imposing sentence. (emphasis added).  This section directs the Court to consider sentences imposed on a defendant with a record similar to Lawrence Hong's record, meaning, in an ideal world, someone at minimum: (1) with a 20-year history of fraudulent conduct; (2) with a prior federal fraud conviction; and (3) who committed their offense while on supervised release.  In addition, the statute directs that the Court should consider defendants engaged in similar conduct, meaning someone engaged in lengthy, significant, affinity investment fraud that causes tens of millions of dollars in losses.  Even after the Court evaluates the factors and finds such a defendant, the Court is only directed to avoid *unwarranted* sentencing disparities.  Thus, the Court is free to impose a sentence higher, even significantly higher, than other cases involving defendants with similar records engaged in similar conduct if the other sentencing factors warrant a disparity in sentences.

Of course, no two cases will involve the exact same conduct, identical records of the defendant, or identical enhancements under the advisory Guidelines.  Thus, the United States is not suggesting the Court should completely disregard any cases that do not fit neatly into the statute.  However, a careful look at the list of defendants included in the Probation Office's recommendation reveals that the Probation Office did not correctly identify defendants of *similar records* engaged in *similar conduct*, except, perhaps arguably, for the matter involving Darren Berg.  The United States will address the Berg matter below, but it is important to note that half of the cases the Probation Office cited – Kevin Lawrence, Rhonda Breard, and Shawn Portman – involve defendants with *no criminal history*.  Thus, they do not have records remotely similar to Lawrence Hong.  Although the other two defendants cited in the Probation Office's recommendation – James Rowe and Keith Anderson – appear to have had criminal histories at the time of

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 29

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

their sentencing, it is not clear whether they engaged in their fraudulent conduct while on supervised release or whether there was other significant indicia of fraud in their past. Furthermore, both of these cases were from the early 2000's (2001 for Rowe and 2002 for Anderson) and they do not appear to involve investment fraud, let alone investment fraud targeting a class of individuals based on their faith and religious beliefs. Likewise, Portman's case involved bank fraud, not investment fraud. Thus, it is a stretch to conclude that these individuals were engaged in conduct similar to defendant Lawrence Hong.

This not to say that the Court should disregard recent prior investment fraud cases in this District and the sentences imposed in them just because the conduct is not identical. However, the Court should consider them *together* in order to get a complete picture of what recent investment fraud sentences have been in this District. Therefore, the United States provides the chart in Exhibit I to provide the Court with context concerning what sentences other defendants who have engaged in investment fraud received in relation to nature of the fraud, the financial harm caused, the defendant's criminal history, and the advisory Guidelines range. Considering the sentences imposed in recent investment fraud cases in this District, including the cases discussed below, two of which involve defendants with somewhat similar records to Lawrence Hong, a sentence of 292 months is wholly appropriate and in fact avoids unwarranted sentencing disparities. Despite their arguments to the contrary, the sentences recommended by the Probation Office (12 years) and the defendant Lawrence Hong (8 to 10 years) will actually cause unwarranted sentencing disparities.

*United States v. Richard Zieske*, CR17-137 JLR – Earlier this year, Judge Robart sentenced Richard Zieske, who was convicted at trial for an investment fraud, to a term of imprisonment of 8 years. *Zieske*, CR17-137 JLR, Dkt. 163. Before engaging in his current scheme, Zieske had previously served a 41-month sentence as a result of a prior federal fraud conviction in this District stemming from an investment fraud scheme and completed his term of supervised release. *See Zieske*, United States' Sentencing

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 30

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Memorandum, Dkt. 150, page 3.  The fraud for which Judge Robart recently sentenced

2  Zieske involved two victims with losses of approximately $127,915.  *Id*., page 19

3  (discussing restitution to two victims).

4       In stark and dramatic contract, the Hongs' fraud caused losses exceeding $12.7

5  million (compared to $127,915), about 100 times as large as Zieske, and involved 57

6  individual victims (compared to two victims).  Lawrence Hong did not self-report.  He

7  has not assisted law enforcement or made any effort to secure restitution for victims.  In

8  addition, unlike Zieske, Lawrence Hong has a lengthy history of fraudulent conduct, and

9  began his fraud almost immediately upon commencement of a three-year term of

10 supervised release for a prior federal conviction for similar fraud conduct.

11      In short, Zieske and Hong are drastically dissimilar.  Lawrence Hong's

12 circumstances are far more aggravating.  In fact, *Zieske* undermines Lawrence Hong's

13 paltry recommendation and only supports the government's position, namely, that

14 Lawrence Hong and the uniquely aggravating factors he presents warrant a significantly

15 higher sentence.

16      *United States v. Chris Yoo*, CR 17-075 TSZ – In August 2017, the Court sentenced

17 Chris Yoo to a 9-year term of imprisonment, *within the advisory Guidelines range*.[7]

18 Yoo, a registered investment advisor, misappropriated approximately $3.7 million from

19 17 victims and used the money to fund his lifestyle.  *Yoo*, CR17-075 TSZ, United States

20 Sentencing Memorandum, Dkt. 18, page 1.  Although he violated a civil injunctive Order

21 entered in a prior Securities and Exchange Commission matter, Yoo had no criminal

22 history.  Significantly, unlike the Hongs, whose fraud was revealed only through the

23 tireless work of the FBI and Commodity Futures Trading Commission (CFTC), Yoo self-

24 reported his crime to the United States, immediately confessed, and consented to two

25

26 [7] The United States understands that this matter is scheduled to be resentenced in the near future.

27 However, the fact that the Court gave Yoo a sentence of 9 years after evaluating the 3553(a)
   factors is relevant in discussing whether the significant sentence the United States requests

28 would result in an unwarranted sentencing disparity.  As discussed below, it will not.

UNITED STATES v. SUNG HONG, CR17-163TSZ                    UNITED STATES ATTORNEY
SENTENCING MEMORANDUM - 31                                      700 STEWART STREET
                                                              SEATTLE, WASHINGTON 98101
                                                                    (206) 553-7970

1   days of interviews in order to help unravel his scheme.  Lawrence Hong is not

2   comparable to Yoo.  Hong not only had a prior federal conviction for investment fraud,

3   but further committed the crime of conviction while serving his term of supervised

4   release.  He stole far more money from far more victims, uniquely based on religious

5   affiliation.  He did not self-report but rather was arrested and, even thereafter, has done

6   little, if anything, to aid law enforcement in unwinding his fraud or recouping restitution

7   for victims.  Still more, as evident by his anticipated arguments at sentencing, Lawrence

8   Hong continues to minimize his criminal culpability.

9          In short, *Yoo* supports the government's recommendation and corroborates the

10  need for a substantial sentence --- far in excess of the 9-year sentence imposed by this

11  Court upon Chris Yoo, who self-reported his misconduct, cooperated to assist

12  investigators and victims, and had no criminal history, and whose crime involve

13  substantially less loss and fewer victims.

14         *United States v. Mark Spangler*, CR12-133 RSM – In 2013, Judge Martinez

15  sentenced Mark Spangler, an investment adviser who promised safe investments but

16  diverted investor money to two risky start-up companies he controlled, to a term of

17  imprisonment of 16 years (192 months) after trial.  During his scheme, Spangler caused

18  $19.8 million in losses to more than 10 victims.  *Spangler*, United States' Sentencing

19  Memorandum, Dkt. 159, page 1-2.  Spangler had no prior criminal history.  By contrast,

20  Lawrence Hong had a long history of fraud, including a prior federal fraud conviction,

21  and committed crimes while on supervised release.  Once again, Hong's circumstances

22  are far more aggravating.

23         *United States v. Darren Frederick Berg*, CR10-310 RAJ – In February 2012,

24  Judge Jones followed the joint recommendation of the United States and Berg and

25  sentenced Berg to a term of imprisonment of 18 years (216 months).  Berg, who had an

26  old bank fraud conviction from the District of Oregon (it did not score under the

27  Guidelines), defrauded hundreds of investors in a series of investment funds over the

28  course of 10 years.  When his fraud finally collapsed, Berg had caused losses of

approximately $140 million.  There are a number of factors to consider regarding Berg's sentence.  First, unlike Lawrence Hong, Berg had agreed to recommend a significant sentence of 18 years as part of a joint recommendation with the United States.  Second, Berg attempted to cooperate with the United States and the bankruptcy trustee to help unravel his fraud.  Finally, and perhaps most importantly, we now know, with the benefit of hindsight, that the 18-year sentence was woefully inadequate as Berg escaped from Bureau of Prison's custody on December 6, 2017, and is now a fugitive.

These cases show that the 292-month sentence the United States requests will not result in any unwarranted sentencing disparity.  To the contrary, the sentences imposed on Zieske (8 years for a recidivist who had two victims at $127,000 loss) and Yoo (9 years for an investment adviser with no criminal history who self-reported his criminal conduct of $3.4 million in loss and then cooperated with law enforcement) within the past 14 months highlight the sentencing disparity that would result if the Court followed either the recommendation of the Probation Office (12 years) and the defense (8 to 10 years).

Put simply, when considered objectively, it is apparent that there is no previously sentenced defendant similarly situated to Lawrence Hong.  Rather, considering his repugnant history, the scope and depravity of his current fraud, and the absolute lack of mitigating circumstances, Lawrence Hong, in the United States' view, stands alone as arguably the worst fraud offender ever sentenced in Western Washington.  The Court should impose a lengthy sentence that acknowledges and reflects Lawrence Hong's unique case.

//

//

//

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 33

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

# V.    CONCLUSION

For the foregoing reasons, the United States respectfully recommends that defendant be sentenced to 292 months of imprisonment, to be followed by a three-year term of supervised release subject to the conditions recommended by the Probation Office.

DATED this 28th day of September, 2018.

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney

*s/ Justin W. Arnold*
JUSTIN W. ARNOLD
Assistant United States Attorney

*s/ Steven Masada*
STEVEN T. MASADA
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington, 98101-1271
Telephone: (206) 553-7970

UNITED STATES v. SUNG HONG, CR17-163TSZ
SENTENCING MEMORANDUM - 34

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

CERTIFICATE OF SERVICE

2

3        I hereby certify that on September 28, 2018, I electronically filed the foregoing

4   with the Clerk of Court using the CM/ECF system which will send notification of such

5   filing to the attorney(s) of record for the defendant(s).

6

7

8                                                *s/Anna Chang*
                                                 ANNA CHANG
9                                                Paralegal
10                                               United States Attorney's Office
                                                 700 Stewart Street, Suite 5220
11                                               Seattle, Washington 98101-1271
12                                               Telephone:   (206) 553-7970

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES v. SUNG HONG, CR17-163TSZ                    UNITED STATES ATTORNEY
SENTENCING MEMORANDUM - 35                                    700 STEWART STREET
                                                           SEATTLE, WASHINGTON 98101
                                                                 (206) 553-7970